## 10239

### SON *ET AL.* v. SHEALY *ET AL.*

(99 S. E. 825.)

1. Deeds—Consideration—Rendition of Service.—So-called conditions in a deed requiring grantees to render services to the grantor and another show valid consideration for the deed, so that it is not a gift.

2. Deeds—Estate Conveyed—Omission of Words of Inheritance.—So-called conditions in a deed stating grantor's desire that the property belong to grantees free of any claim of grantors merely show a purpose of granting fee, and they are ineffectual, since they omit words of inheritance.

8. Deeds—Condition Subsequent—"Lawful Heirs."—A condition in a deed that the grantees should not sell the land, but that it should descend to their lawful heirs, does not entitle 'the grantee's children, as heirs of grantee, to recover possession from the purchaser of the grantee without allegation that the grantee was dead, since no one is an heir of the living, and the words "lawful heirs" will not be construed to mean children to aid a forfeiture.

4. Deeds—Conditions—Restriction on Alienation—Liability for Debt.—Conditions subsequent in a deed that the land would not be liable for the debts of grantees are against public policy and inoperative.

5. Deeds—Estates Conveyed—Fee Simple—Void Condition.—Where a deed omitted words of inheritance in a conveyance, but contained invalid restrictions on alienation for the expressed purpose that the land might go to heirs of grantee, the invalid conditions may be disregarded so that the conveyance is to the grantees and their heirs.

Before Mauldin, J., Lexington, Spring term,' 1919. Reversed.

Action by Henry Son and others against Ethel B. Shealy and another. Judgment for the plaintiffs, and defendants appeal.

*Mr. E. L. Asbill,* for appellants, cites: *As to the construction of the deed of Isaac Alewine:* 6 Rich. Eq. 138; 83 S. C. 266; 76 S. C. 36, 39; 56 S. E. 546; 76 S. C. 484, 488; 57 S. E. 614; 5 Rich. 356; 95 S. C. 32; 96 S. C. 263; 57 S. C. 173.

*Messrs. Timmerman, Graham & Callison,* for respondents, cite: *As to the construction of the deed of Isaac Alewine:* 106 S. C. 304; 102 S. C. 242; 35 S. C. Eq. (14 Rich. Eq.) 271; Dev. on Deeds, sec. 213, *et seq.;* 82 Ark. 209; 101 S. W. 407; 12 L. R. A. (N. S.) 956, and note; 13 Cyc. 688, 699, 702h; 15 S. C. 442; 35 Cyc. 1451, and authorities cited under note 89; 2 Wheat. 196, 4th Ed. 218; 22 S. W. 107; 2 Tex. Civ. App. 650; Supp. Ct. 962; 120 U. S. 707; 30 L. Ed. 776; 94 U. S. 100; 24 L. Ed. 71.

July 14, 1919.

The opinion of the Court was delivered by Mr. Justice Fraser.

This is an action to enforce a forfeiture under a deed. The question in the case arises on a demurrer to the complaint on the ground that it does not state a cause of action. The complaint is:

"(1) That on the 10th day of January, 1881, Isaac Alewine conveyed to Edward Son and Dixon Son a conditional life estate in the following premises, to wit: All that piece, parcel, or tract of land situate, lying, and being in the county and State aforesaid, on Horse Creek, waters of Saluda River, containing 70 acres, more or less, bounded by lands of Isaac Vansant, S. R. and J. H. Lewie, and of Isaac Alewine, and known as the Jacob Lominach place—which said deed was duly recorded in the office of the clerk of Court for Lexington county, in Deed Book CC, page 281, a copy of which is hereto attached and marked Exhibit A, and to which deed plaintiffs pray leave to refer as often as may be necessary.

"(2) That the said Isaac Alewine died some 20-odd years ago, and soon thereafter Dixon Son left the State of South Carolina without issue, and has never been heard of since that time, although more than 20 years have elapsed since he left the said State.

"(3) That the said Edward Son occupied said premises until about the 8th day of January, 1916, when he undertook to sell and convey the said premises to the defendant, Ethel B. Shealy, and executed and delivered to the said Ethel B. Shealy, a deed of conveyance for said premises, which deed of conveyance was recorded in the office of the clerk of Court of Lexington county, in Book 3L, at page 573.

"(4) That the said Edward Son, in conveying said premises to the defendant, Ethel B. Shealy, violated the express condition contained in said deed and forfeited the conditional life estate conveyed to him in the said premises described in the first paragraph of this complaint, which deed expressly says:

" 'Fifth. That the said Edward and Dixon, or either or both of them, as the case may be, shall not sell, trade, or dispose of the said tract of land, but shall reserve the same for a home so long as they may live, and, further, that the said land shall not be liable to any of the debts, contracts, or liabilities of the said Edward and Dixon, but shall descend to their lawful heirs.'

"(5) That the said Edward Son could not have conveyed any estate, right, or title in said premises to the defendant, Ethel B. Shealy, and she has no title to the said premises.

"(6) That the plaintiffs, Georgian Taylor, who intermarried With W. E. Taylor, and is now Georgian Taylor; Ella Alewine, who intermarried with L. C. Alewine, and is now Ella Alewine; Minnie, who intermarried with W. A. Mills, and is now Minnie Mills; Henry Son, Daisy Son, Julian Son, Annie Magnolia Son, and Geneva Son, who are the children of the said Edward Son and the only legal heirs of the said Edward Son and Dixon Son, the said Georgian Taylor, Ella

Alewine, and Minnie Mills, are *sui juris,* and the said Henry Son, Daisy Son, Julian Son, Annie Magnolia Son, Jessie Son, and Geneva Son being minors under the age of 21 years.

"(7) That on the 20th day of February, 1918, H. L. Harman, Esq., clerk of Court of Lexington county, duly appointed W. A. Mills guardian *ad litem* for the above named minor children, and authorized and directed him to institute and prosecute to a conclusion this action in the Court of Common Pleas on their behalf.

"(8) That the plaintiffs are the owners in fee simple and have the legal title to the tract of land described in the first paragraph of this complaint.

"(9) That the defendant, R. O. Shealy, is the husband of the defendant, Ethel B. Shealy, and is joined with her pursuant to the statute in such case made and provided.

"(10) That the plaintiffs are informed, allege, and believe that the defendant, R. Elmore Shealy, claims some interest in said premises by reason of certain mortgage deed executed to him by the defendant, Ethel B. Shealy, and for this reason is made a party to the defendant in this action.

"(11) That on or about the —— day of ——, 1916, the defendants with force and arms entered upon the premises described in the first paragraph of this complaint, trod down the grass, plowed up the soil, cultivated a portion of the premises, cut, wasted, and destroyed considerable portion of the wood and timber thereon, and cut and sold some 25 carloads of wood and timber that grew upon said premises, and are now cutting, selling, and disposing of the timber thereon, and appropriating the proceeds thereof to their own use to the damage of the plaintiffs in the sum of $5,000.

"(12) That the wood and timber growing on said premises is very valuable, and the destruction of the same is an irreparable injury to the freehold of the plaintiffs.

"(13) On information and belief defendants are insolvent and unable to respond in any damage to the plaintiffs for any sum of money that may be recovered of them for trespassing on their said premises.

"(14) That the conduct of the defendants in entering upon the said premises and holding the possession of the same, and committing the various acts of trespass thereon as hereinbefore stated, was wanton, wilful, and in disregard of the rights of these plaintiffs.

"Wherefore, plaintiffs demand judgment against the defendants, Ethel B. Shealy and R. O. Shealy.

"First, for the possession of the premises described in the first paragraph of this complaint.

"Second, for $5,000, their damages.

"Third, that the defendants, Ethel B. Shealy and R. O. Shealy, their agents and servants, be perpetually enjoined from cutting, wasting, selling, and disposing of the wood and timber on said premises, or in any manner interfering therewith.

"Fourth, for all other and further relief that may be just and proper, together with costs."

The deed reads:

"Know all men by these presents that I, Isaac Alewine, of the county aforesaid, for and in consideration of the provisions hereinafter made, have granted, bargained, give, and released, and by these present do grant, bargain, give, and release, unto Edward Son and Dixon Son, of the county and State aforesaid, all that piece, parcel, or tract of land situate in the county and State aforesaid, on Horse Creek, waters of Saluda River, containing seventy (70) acres, more or less, bounded by lands of Isaac Vansant, S. R. and J. H. Lewie, and of Isaac Alewine, and known as the Jacob Lominach place.

"Now this conveyance is made on the following conditions:

"(1) That the said Edward Son and Dixon Son shall remain with and work for me and under my control and as I may direct until they shall arrive at the age of 21 years.

"(2) That Miss M. E. Son, the mother of the said Edward and Dixon, shall have a home thereon so long as she lives, or until she may marry, and in case of her marriage she is no longer to remain upon said tract of land, or to have any right thereto without the consent of the said Edward and Dixon.

"(3) In case of my death before the said Edward and Dixon shall arrive at the age of 21 years, then and in that event the said property shall belong to them and remain free from any claim or claims of any of my heirs, executors, administrators, or any other person claiming or to claim the same or any part thereof.

"(4) If the said Edward and Dixon, or one or both of them, shall fail or refuse to comply with the conditions herein expressed, then this conveyance to be null and void as to the one refusing to comply, and in that case the said tract of land shall belong to the one so complying, and in case both fail to comply, then the said tract of land shall revert to my heirs or assigns.

"(5) That the said Edward and Dixon, or either or both of them, as the case may be, shall not sell, trade, or dispose of the said tract of land, but shall reserve the same for a home as long as they live, and, further, that the same land shall not be liable to any of the debts, contracts, or liabilities of the said Edward and Dixon, but shall descend to their lawful heirs.

"Together with all and singular the rights, members, hereditaments and appurtenances as thereunto belonging or in any wise incident or appertaining.

"To have and to hold the said premises unto the said Edward and Dixon Son according to the above reservation and their heirs forever.

"And I do hereby bind myself, my heirs, executors, administrators, and assigns, to warrant and forever defend the said premises unto the said Edward and Dixon Son and their heirs forever according to the foregoing conditions.

"In witness whereof I have hereunto set my hand and seal this 10th day of January, A. D. 1881. Isaac Alewine. (L. S.)"

A deed must be enforced to carry out the intention, so far as the law allows. It has been wisely said that "the State is a party to every contract."

The deed contains five so-called conditions. There are not so many. The first paragraph provides for service to be rendered by the grantees to the grantor. Service is a valuable consideration and the deed is not a gift. The second paragraph provides for service to another and is a valuable consideration. The third paragraph is not a condition. It simply states the intention that the grantees shall own the property. It shows that the purpose of the grantor was to convey a fee. It is a strange survival of a feudal technicality that the Courts are without power to give effect to the plain purpose, as distinguished from the legal intention, of the parties. The legislature alone can give relief from this thorn in the flesh. The word "heirs" is not used, and the Courts are powerless to carry out the purpose of the parties as to paragraph 3. Paragraph 4 provides a forfeiture for the failure to perform the service provided for in paragraphs 1 and 2. The complaint does not allege a failure to carry out the provisions of paragraphs 1 and 2. The forfeiture set up is under paragraph 5. If there is a forfeiture in paragraph 5, it is in favor of the lawful heirs of Edward and Dixon Son. The plaintiffs claim as the heirs of Edward Son. There is no allegation in the complaint that Edward is dead, and, therefore, there is no allegation that there are any heirs to take. "No one is an heir of the living." The plaintiffs, therefore, have made no allegation

1-3

that entitled them to recover as heirs of Edward Son, and, therefore, have alleged no cause of action. It is said, however, that the Court should construe the words "lawful heirs" to mean children. There is nothing in the deed or surrounding circumstances to indicate that the potent word "heirs" is stripped of its power. The grantees must have been minors, because they were, by the terms of the deed, to serve the grantor until they arrive at the age of 21 years. The intention of paragraph 5 was to provide a home for Edward, Dixon and their mother, and not for their children. The habendum certainly carried a fee subject only to a reservation, and that reservation was not an estate to children of the grantees, but a reverter, in case of a failure to perform the services required, to the heirs of the grantor or to his assigns. Forfeitures are not favored. The Courts will not strain the construction to provide one.

Paragraph 5 provides that the estate conveyed shall not be liable to debts, contracts, or liabilities of the grantees. It is elemental that that provision is inoperative. The provision against alienation is equally bad, and against public policy. Take out these two inoperative clauses, and we have a conveyance to Edward and Dixon and their lawful heirs.

There is no allegation of a defeasance under 1 to 4, inclusive, and no defeasance under No. 5, so that the deed under which the plaintiffs claim conveyed a fee to Edward and Dixon Son, and, so far as the record shows, the complaint shows no cause of action. The demurrer should have been sustained.

The judgment appealed from is reversed.